RENDERED: APRIL 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1043-ME

SARAH ELIZABETH FARLEY                                      APPELLANT

v.                  APPEAL FROM FAYETTE CIRCUIT COURT
          HONORABLE LUCINDA MASTERTON, JUDGE
                    ACTION NO. 20-D-00334-002

WESLEE DONOVAN FARLEY                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND MCNEILL, JUDGES.

MCNEILL, JUDGE: Sarah Elizabeth Farley appeals from an order of the Fayette

Circuit Court, Family Court Division, denying her petition for a domestic violence

order (DVO) against her husband, Weslee Donovan Farley. Because the family

court had the discretion to choose which testimony to believe and which to

disbelieve, we affirm.

Sarah and Weslee had already considered divorcing when Weslee brought home a puppy after working his shift as a police officer. Sarah, who apparently dislikes and/or is scared of and/or is allergic to dogs, met Weslee and the dog in the garage. An intense argument ensued.[1] At one point, an irate Sarah went inside and retrieved a firearm, which she threatened to use against the dog. Weslee was seemingly either holding the dog or was in close proximity to it during much of the argument because Sarah remarked that the dog would not stop a bullet.

Weslee left the marital residence and went to seek an emergency protective order, which was granted. When Weslee re-entered his police cruiser, he noticed Sarah approaching. Weslee remained in his vehicle and called for assistance. At the DVO hearing, Officer Brian McAllister testified that he was the first responding officer and that Sarah, who had a loaded firearm in her purse, showed him scratches on her arm she said were made by a dog. But Officer McAllister testified he thought the marks were self-inflicted as the puppy was young, small, and not behaving viciously. Sarah was charged with wanton endangerment for having brandished a firearm in the garage of the marital residence.

---

[1] Weslee taped audio of the argument with his cell phone and portions of that recording were played at the DVO hearing.

In June 2020, Sarah was granted an emergency protective order against Weslee based upon her allegations that he had been abusive to her. A hearing on Weslee's request for a DVO against Sarah and Sarah's request for a DVO against Weslee was held later that month.

At that hearing, Weslee denied that he had ever physically harmed Sarah or threatened to do so. In addition to presenting Officer McAllister's testimony about Sarah's scratches, Weslee presented testimony from other witnesses who recalled Sarah: having driven recklessly near a school; having engaged in a verbal altercation near a traffic accident, which included threatening to use a firearm on another person because she—unreasonably in the police officer witness's opinion—stated she feared for her safety; and having threatened a utility worker with a firearm if the worker did not leave Sarah's property. Sarah testified as to Weslee's alleged lengthy history of being physically and psychologically abusive toward her. Sarah presented photographs as exhibits, some of which depicted marks or bruises purportedly caused by Weslee.

At the conclusion of the hearing, the trial court granted Weslee's request for a DVO against Sarah, noting that it was undisputed that Sarah had threatened to use a firearm during the argument in the garage. However, the trial court denied Sarah's request for a DVO against Weslee, essentially finding that Sarah was not a credible witness. The vast majority of the trial court's oral

findings focused on its belief that Sarah's demeanor was unemotional and atypical for a domestic violence victim. In addition, the court briefly remarked upon matters such as Sarah's waiting about three months to seek a DVO after the March 2020 argument in the garage and not trying to forbid Weslee from entering the residence from the garage, instead only telling him to shower and change clothes before entering since he had contacted the dog. The court did not comment on the photographs introduced by Sarah. Sarah then filed this appeal.

Kentucky Revised Statute (KRS) 403.740(1) provides in relevant part that a DVO may be issued "if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur . . . ." To satisfy the preponderance of the evidence standard, the alleged victim must show he or she "was more likely than not to have been a victim of domestic violence." *Hall v. Smith*, 599 S.W.3d 451, 454 (Ky. App. 2020) (citation omitted). Domestic violence and abuse is defined in KRS 403.720(1) as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members . . . ."

We deferentially review a trial court's decision regarding issuance of a DVO, assessing whether the trial court abused its discretion or its decision was clearly erroneous. *Hall*, 599 S.W.3d at 454. Thus, the question is "not whether we

would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion. Abuse of discretion occurs when a court's decision is unreasonable or unfair." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted).

If believed, the evidence presented by Sarah may have been sufficient to support the issuance of a DVO against Weslee. But the trial court did not believe Sarah, nor did it have to—even though she seems to argue on appeal that the court had to believe her version of events.

Sarah contends that it was unreasonable for the trial court to not give credence to her extended testimony of abuse, which generally was supported by the photos she submitted. Her argument, however, runs directly contrary to the bedrock legal principle that the finder of fact has the discretion to choose which testimony to believe. *Muir v. Muir*, 406 S.W.3d 31, 34 (Ky. App. 2013).

In fact, even if Sarah's testimony had been uncontradicted—which it certainly was not given Weslee's denial of having abused her—a finder of fact in Kentucky is not even required to give full credence to uncontested testimony presented by an interested party, as Sarah surely was. *See, e.g.*, *Bullock v. Gay*, 296 Ky. 489, 177 S.W.2d 883, 885 (1944) ("The general rule in respect to the weight to be accorded uncontradicted testimony is: If the witness is [disinterested], and in no way discredited by other evidence, and the testimony is as to a fact not

improbable or in conflict with other evidence, and is within his own knowledge, such fact may be taken as conclusive. But such rule does not necessarily apply, if the uncontradicted evidence is given by interested witnesses. In this connection it may be said that the evidence, although uncontradicted, must be positive, clear, and unequivocal . . . .") . Instead, "[o]rdinarily, uncontradicted testimony remains subject to the scrutiny of the trier of fact as to its credibility and may be rejected by them where it is not believed." 32A C.J.S. *Evidence* § 1580 (2021).

Sarah's testimony also contained what could be perceived as questionable inconsistencies. For example, she expressed no fear of Weslee during the March 2020 argument and, in fact, voluntarily found and approached him near the courthouse soon after the argument. And Sarah can be heard derisively remarking that, in essence, she was not afraid of Weslee on the audio of the argument in the garage.

In short, we reject Sarah's argument that the trial court had to believe her testimony. The family court, as the finder of fact, had the discretion to choose which testimony to believe. *Muir*, 406 S.W.3d at 34.

Finally, despite Sarah's disagreement, it was not improper for the trial court to factor Sarah's relatively flat or dispassionate affect during her testimony as weighing against her credibility. The trial court explained that it was aware that some people were not demonstrably emotive but, in its experience, domestic

violence victims tended to cry or otherwise appear emotional when first relating the abuse inflicted upon them. While there was no expert testimony regarding any behavior of domestic violence victims, the demeanor of a witness is nevertheless among the factors which may be used in determining credibility:

> A family court has broad discretion with respect to testimony presented, and may choose to believe or disbelieve any part of it. *It is also entitled to make its own decisions regarding the demeanor and truthfulness of witnesses*, and a reviewing court is not permitted to substitute its judgment for that of the family court unless its findings are clearly erroneous.

*Muir*, 406 S.W.3d at 34 (emphasis added).

We do not take lightly allegations of domestic violence. And we share some of Sarah's puzzlement at the trial court's decision to not address at all the photos in its extended oral findings. Instead, the vast majority of the court's findings focused on how it did not believe Sarah because the court believed her behavior and demeanor were atypical for domestic violence victims. While Sarah's arguments are not without merit, there is simply not enough here to rule the trial court abused its discretion. At its core, this case presented the court with a binary choice. It had to believe either Sarah's allegations of abuse or Weslee's denial thereof. Both could not be simultaneously, completely true. The family court chose to believe Weslee based upon a combination of factors such as the judge's extensive experience with victim behavior in domestic violence cases, the

court's view of what it perceived to be some inconsistencies in Sarah's evidence, and Sarah's demeanor. Another finder of fact may have reached a different conclusion. However, because Sarah has not shown the trial court's findings are an abuse of discretion or clearly erroneous, we must affirm.

For the foregoing reasons, the order of the Fayette Circuit Court, Family Court Division is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:

Dan Carman
Lexington, Kentucky

BRIEF FOR APPELLEE:

Della C. Cummings
Lexington, Kentucky