RENDERED: MARCH 21, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1436-MR

MONA RHEA BASHAM                                                           APPELLANT

v.                   APPEAL FROM WARREN CIRCUIT COURT
                     HONORABLE DAVID A. LANPHEAR, JUDGE
                     ACTION NO. 21-CI-01473

BRODERICK NELSON BASHAM                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND McNEILL, JUDGES.

JONES, A., JUDGE: The Appellant, Mona Rhea Basham, seeks review of the findings of fact, conclusions of law, and judgment entered by the Warren Circuit Court ("family court") on August 2, 2023, as well as several discovery-related orders issued prior to the final judgment. Mona contends that the family court erred in imposing discovery-related sanctions due to her failure to fully respond to discovery requests propounded by her former spouse, the Appellee, Broderick

Nelson Basham, and her failure to produce a final verified financial disclosure before trial. She further argues that the family court improperly delegated its fact-finding role to Broderick, erroneously denied her request for maintenance, and incorrectly classified the parties' former residence as marital property. Upon review of the record and applicable law, we affirm.

## I. BACKGROUND

Mona and Broderick were married on May 6, 1978. After forty-one years of marriage, Broderick filed for dissolution on December 9, 2021. In his petition, Broderick requested that each party be restored to their respective nonmarital property, that marital property and debts be equitably divided, that each party be responsible for their own attorney's fees, and that neither party be awarded maintenance. Mona filed a response requesting spousal maintenance.

On or about December 22, 2021, Broderick served Mona with interrogatories and document requests. When she failed to respond, he filed a motion to compel. On May 12, 2022, the family court ordered Mona to comply. In July 2022, she provided partial responses, with a letter from her counsel indicating that additional documents – including three years of credit card statements, two years of bank statements, documentation regarding grave plots, and information on an inheritance – would be provided later.

On January 11, 2023, just over a month before trial, Broderick filed a second motion to compel, stating that Mona had still not provided the missing documents. The family court granted the motion and ordered her to produce the requested materials by January 28, 2023.

Broderick subsequently filed his verified financial disclosure, but Mona did not file hers and failed to comply fully with the court's discovery orders. On February 14, 2023, the family court ordered Mona to appear and show cause why she should not be held in contempt. At the February 17, 2023, hearing, the family court found that Mona had not complied in good faith, noting that her discovery issues had persisted for months. As a sanction, the court ruled that Mona could not introduce documents previously requested but not produced.

Trial proceeded on February 24, 2023. At trial, Broderick argued that Mona failed to comply with the Kentucky Family Court Rules of Procedure and Practice ("FCRPP") by not filing a final verified disclosure statement or an affidavit confirming no changes to her preliminary disclosure. As a result, the family court barred Mona from introducing any further testimony or evidence regarding her expenses. Mona did not request permission to submit testimony or documentary evidence by avowal.

On July 31, 2023, the family court entered a bifurcated decree dissolving the marriage while reserving further issues for later determination,

including the division of marital property, the parties' nonmarital property claims, and Mona's request for maintenance. On August 2, 2023, the family court issued a final order resolving the remaining issues.

Relevant to this appeal, the family court rejected Mona's claim that the parties' former marital residence was her nonmarital property. Instead, it ordered the property sold and the proceeds divided. Additionally, the court classified $58,300 from the prior sale of certain real estate in Edmonson County as marital property and, due to Mona's failure to provide discovery regarding her receipt and use of the funds, presumed the full amount remained in her possession.

The court denied Mona's request for maintenance, citing her failure to provide testimony regarding her expenses or reasonable needs. It further found that Broderick's litigation efforts had been "unnecessarily complicated and frustrated" by Mona's failure to provide basic discovery responses and cooperate in filing joint tax returns. As an additional sanction, the court ordered Mona to pay $1,500 toward Broderick's attorney's fees.

On August 16, 2023, Mona filed a CR[1] 59.05 motion to alter, amend, or vacate the judgment. She argued that the family court should have allowed her to testify regarding the estimated expenses she provided in her preliminary disclosures despite her later discovery violations. She also contended that the court

---

[1] Kentucky Rules of Civil Procedure.

erred in presuming she still possessed the Edmonson County sale proceeds, asserting that the information was either improperly requested or beyond her control, as she would have had to pay the bank to obtain records. Finally, she maintained that the court failed to consider her testimony that Broderick intended to gift her the marital residence as evinced by the fact that he declined her offer to reverse a 1992 quitclaim deed transferring the home solely into her name.

The trial court denied Mona's motion, and this appeal followed. Additional facts will be discussed as necessary.

## II. STANDARD OF REVIEW

Mona raises four arguments on appeal. First, she contends the family court erred in finding that she failed to provide sufficient discovery and in issuing the August 4, 2023, order of contempt. Second, she argues the family court abused its discretion by denying her the opportunity to fully testify about her monthly expenses in support of her maintenance claim. Third, she asserts that the family court improperly denied her request for maintenance. Finally, she maintains that the family court erred in rejecting her claim that the parties' residence was her nonmarital property.

A family court "has broad discretion in addressing a violation of its order[s]" regarding discovery. *Wilson v. Commonwealth*, 381 S.W.3d 180, 191 (Ky. 2012). We review the family court's determination of the appropriate

sanction for abuse of that discretion. *Turner v. Andrew*, 413 S.W.3d 272, 279 (Ky. 2013).

Likewise, family courts have broad discretion in classifying and awarding marital and nonmarital property and evaluating requests for spousal maintenance. *Thielmeier v. Thielmeier*, 664 S.W.3d 563, 573 (Ky. 2022); *Stipp v. St. Charles*, 291 S.W.3d 720, 727 (Ky. App. 2009). On appeal, this Court may only disturb decisions on such matters where the family court abused its discretion or based its decision on findings of fact that are clearly erroneous. *Naramore v. Naramore*, 611 S.W.3d 281, 286 (Ky. App. 2020).

### III. ANALYSIS

Mona acknowledges that she failed to file her final verified financial disclosure as required by FCRPP 2 and did not fully comply with the family court's discovery orders. However, she argues that the court's sanction – prohibiting her from introducing the withheld documents and evidence in support of her claims – was excessively harsh. She further contends that the family court should have conducted a more thorough review of the materials she did provide before determining an appropriate sanction.

In determining whether a discovery sanction is appropriate, the court may consider the following factors: (1) whether the noncompliance was willful or in bad faith; (2) whether the other party was prejudiced by the noncompliance; (3)

-6-

whether the disobedient party was warned that failing to cooperate could lead to sanctions; (4) whether less drastic sanctions were considered; and (5) whether the sanctions imposed bear a reasonable relationship to the seriousness of the noncompliance. *R.T. Vanderbilt Co., Inc. v. Franklin*, 290 S.W.3d 654, 662 (Ky. App. 2009).

Mona's ongoing failure to comply with Broderick's discovery requests and court orders was clearly willful and in bad faith. She had months to provide requested documentation and failed to either do so or to request a protective order. While Mona may have disagreed with the family court's decision to require her to comply with all Broderick's discovery requests, her disagreement does not mean that she was relieved from complying with the court's orders. A litigant is required to comply with all a court's orders regardless of whether she agrees with them. The family court also plainly believed that Mona's failure to fully respond to the outstanding requests prejudiced Broderick. We agree. Without the documents, Broderick would have been unable to effectively refute or attack Mona's testimony regarding her expenses and her claims regarding how she spent the money from the sale of the Edmonson County property.

CR 37.02 grants trial courts the authority to impose sanctions when a party fails to comply with discovery orders. Among the available remedies, the court may enter "an order refusing to allow the disobedient party to support or

oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence[.]" CR 37.02(2)(b). In this case, the family court prohibited Mona from introducing evidence that she had failed to properly disclose, such as her final verified disclosures and records regarding the disposition of $58,300 from the land sale in Edmonson County.

Mona contends that she had provided "enough" discovery to avoid sanctions, citing partial responses and her initial disclosure. However, the family court determined that key information – such as bank records necessary to trace the funds – was not properly produced. Courts have discretion in determining whether discovery failures justify sanctions, and appellate courts review such rulings under an abuse of discretion standard. The family court's ruling appears to be a measured application of CR 37.02(2)(b), rather than an arbitrary refusal to consider evidence. We can ascertain no abuse of discretion.

Next, Mona asserts the family court abused its discretion when it allowed Broderick to draft the findings of fact as a sanction for Mona's discovery violations. The family court's discovery order states:

> 2. Due to [Mona's] failure to provide and comply with previous Orders of the Court, the Court will adopt [Broderick's] assertions and proposed Findings of Fact concerning what said discovery would have been provided.
>
> 3. [Mona] will be prohibited from rebutting said Findings of Fact with additional documents that were not

produced by the February 17, 2023 [show cause] hearing held in this matter on [Broderick's] Motion to Compel and Motion for Contempt.

While it is true that courts should engage in independent fact-finding, the mere adoption of one party's proposed findings does not constitute reversible error, unless it is shown that the court failed to exercise independent judgment. *Prater v. Cabinet for Human Resources, Commonwealth of Ky.*, 954 S.W.2d 954, 956 (Ky. 1997); *Bingham v. Bingham*, 628 S.W.2d 628, 629 (Ky. 1982). A side-by-side comparison of Broderick's proposed findings and the findings ultimately entered by the family court shows the family court made several modifications. This indicates the family court conducted an independent review and that its judgment was a product of judicial decision making and discretion. Moreover, irrespective of the language contained in the family court's discovery order, the judgment shows that the sanctions imposed were not findings of fact *per se*, but they were rather determinations regarding what evidence could be considered based on discovery compliance. The exclusion of evidence was a direct consequence of Mona's failure to fully comply with discovery orders, not an arbitrary endorsement of Broderick's position.

Next, Mona asserts that the family court should have still considered the limited evidence before it to award her some maintenance. However, on this point, we note that the family court refused to allow Mona to introduce any

evidence of her reasonable monthly expenses and resources. The determination of maintenance involves a two-pronged analysis. First, the family court must decide whether the requesting spouse is even entitled to maintenance at all by examining that spouse's financial needs and resources. *Wattenberger v. Wattenberger*, 577 S.W.3d 786, 787 (Ky. App. 2019). Pursuant to KRS[2] 403.200(1), the family court may award maintenance if it finds that the spouse seeking maintenance: (a) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (b) is unable to support herself through appropriate employment. *McVicker v. McVicker*, 461 S.W.3d 404, 420 (Ky. App. 2015).

While the evidence before the family court may have been sufficient enough to conclude Broderick was better situated to support himself than Mona, there was not sufficient evidence for the family court to make a reasoned determination regarding whether Mona had sufficient assets to meet her reasonable needs. The lack of this evidence was Mona's fault. Had she met her discovery-related obligations, she would not have been sanctioned by the family court. Mona's failure to comply with the family court's order led to the exclusion of her testimony and supporting documentation regarding her financial needs. While this may have had a significant impact on her spousal support claim, the family court's decision was consistent with the principle that parties cannot benefit from

---

[2] Kentucky Revised Statutes.

-10-

withholding required disclosures.  The family court's approach was narrowly tailored to enforce compliance with discovery rules and prevent selective adherence to procedural obligations.

Additionally, we note that Mona did not request the family court to allow her to submit the disputed testimony and documentary evidence by avowal. Offers of proof and avowals serve to "provide a record sufficient for an appellate court to review decisions concerning the admissibility of evidence." *Hart v. Commonwealth*, 116 S.W.3d 481, 483 (Ky. 2003).  "This Court has stated that 'excluded testimony must be placed in the record by avowal to be preserved for our review.'" *Charash v. Johnson*, 43 S.W.3d 274, 281 (Ky. App. 2000) (quoting *Transit Auth. of River City v. Vinson*, 703 S.W.2d 482, 487 (Ky. App. 1985)). "Without an avowal, or a crystal ball, reviewing courts can never know with any certainty what a given witness's response to a question would have been if the trial court had allowed them to answer.  Appellate courts review records; they do not have crystal balls." *Hart*, 116 S.W.3d at 484 (citation omitted).

Without knowing what evidence Mona would have adduced, we have no way of concluding that Mona would have been able to demonstrate an entitlement to maintenance, and if so, what amount would have been reasonable. Thus, we cannot conclude that Mona would have been entitled to maintenance even if she had been permitted to introduce evidence of her reasonable expenses.

Lastly, we address Mona's claim that the family court erred in classifying the parties' former residence as marital property rather than her separate nonmarital property. The residence was originally purchased with marital funds. However, at some point, Broderick was involved in an automobile accident that resulted in litigation. The parties were concerned that the residence would be at risk if a judgment in excess of the parties' liability insurance coverage was entered against Broderick. To safeguard the property, they agreed to transfer ownership to Mona, and in 1992, Broderick executed a quitclaim deed in her favor. Subsequent to 1992, the property was encumbered by numerous mortgages, which the parties paid off using marital funds. At the time of the parties' dissolution, the property was still only in Mona's name.

Applying *O'Neill v. O'Neill*, 600 S.W.2d 493 (Ky. App. 1980), the family court concluded that the quitclaim deed was not dispositive. The family court reasoned that irrespective of the deed, the evidence did not indicate that Broderick intended to gift his marital interest in the residence to Mona. The family court found it notable that the parties continued to pay the mortgages using marital funds and that Mona acknowledged that Broderick deeded the residence to her "to avoid possible collection efforts by potential creditor(s) of Broderick."

Mona does not disagree with any of these facts. Rather she argues that the family court failed to give any weight to her testimony that she later

-12-

revisited the issue with Broderick and asked about putting the residence back into his name as well, and he declined saying he wanted her to have it. She further asserts that the family court erred in determining that the facts did not prove that Broderick intended to gift the property to her.

Mona contends that the family court erred by failing to give weight to her testimony that Broderick refused her offer to put the house back in his name, thereby demonstrating his intent to gift the property to her. However, it is well within the trial court's prerogative to assess witness credibility and determine which testimony to accept or reject. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) ("[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court."). The family court was entitled to find that Mona's testimony did not outweigh the substantial evidence indicating that the residence was treated as marital property throughout the marriage. The court's refusal to accept Mona's account was a discretionary credibility determination, which we will not disturb on appeal.

Further, the family court's conclusion that Broderick did not intend to make a gift of the residence was supported by the broader context of the transfer. The evidence clearly demonstrated that the quitclaim deed was executed not as a voluntary relinquishment of Broderick's interest but as a strategic effort by both parties to shield the property from potential creditors. Given this context, the

family court reasonably determined that the intent behind the transfer was not donative but protective, meaning that neither party should be permitted to benefit from the arrangement to the detriment of the other.

Moreover, the parties' ongoing treatment of the residence further supports the family court's classification of it as marital property. Despite the deed's being in Mona's name, both parties contributed to mortgage payments using marital funds for decades. This continuous financial entanglement strongly suggests that both Mona and Broderick regarded the home as a shared marital asset rather than a separate gift. To treat it otherwise would unjustly penalize Broderick for a decision that both parties jointly made, while unfairly benefiting Mona. The most equitable resolution, and the one properly reached by the family court, was to disregard the quitclaim deed and classify the residence as marital property, reflecting the reality of how it was used and maintained throughout the marriage.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Warren Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Timothy S. Hendrix
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

Christopher T. Davenport
Bowling Green, Kentucky